THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDWARD MATZKER, Defendant-Appellant.

Fifth District   No. 81—614

Opinion filed May 11, 1983.

Randy E. Blue and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William A. Schuwerk, State's Attorney, of Chester (Stephen E. Norris and Debra A. Buchman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

The record in the instant appeal indicates that defendant, a resident of the honor farm at Menard Correctional Center, walked away with two other residents on August 10, 1980. A memorandum from Ron Umbdenstock, captain in charge of internal affairs at Menard, to Jim Buch, assistant warden, recited that defendant was apprehended in St. Louis, Missouri, on March 11, 1981, and was held in the St. Louis County jail on a fugitive warrant until April 1, 1981, when he was released on bond; the St. Louis court received the Missouri governor's extradition warrant on May 21, 1981; when defendant appeared before that court on May 28, 1981, he was arrested and jailed;

and defendant was returned to Menard on June 11, 1981, upon his release from a hospital.

Subsequently, defendant was convicted of escape and sentenced to 12 years' imprisonment, to be served consecutively to the term defendant was serving for burglary when he escaped. The trial court refused to credit defendant upon the escape sentence for time served in St. Louis County, stating that defendant was entitled to no credit because all of his custody in St. Louis County was a result of the burglary conviction. Defendant appeals, contending that he was entitled to credit for time served in St. Louis County prior to his return to Illinois.

Defendant relies on the plain language of the credit-for-time-served statute, which provides that the offender shall be given credit for "time spent in custody as a result of the offense for which the sentence was imposed." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—7(b).) However, section 5—8—4(g) of the Unified Code of Corrections provides that a sentence for escape "shall be served consecutive to the terms under which the offender is held by the Department of Corrections." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—4(g).) In the instant case, defendant was returned to Menard to complete his burglary sentence, which he was serving when he escaped. If defendant were to be given credit against his escape sentence for the time he served in Missouri, he would, in effect, be serving part of his escape sentence prior to completion of his burglary sentence, rather than consecutively to it as required by section 5—8—4(g). It appears, therefore, that section 5—8—7(b) and section 5—8—4(g) cannot both apply to the instant facts.

■■ ■ Since it may be argued that both sections apply to the instant facts and our legislature's intent as to which section should apply is not readily apparent from the express language of those sections, we turn to the maxims of statutory construction. One well-established principle is that a specific statutory provision controls as against the general provision on the same subject. (*People ex rel. Siekmann v. Pennsylvania R.R. Co.* (1944), 385 Ill. 350, 356, 52 N.E.2d 796, 798-99.) Since section 5—8—7(b) applies to any offense, while section 5—8—4(g) applies only to the offense of escape, we conclude that section 5—8—4(g) rather than section 5—8—7(b) applies to the facts of this case. Therefore, the trial court did not err in denying credit against defendant's escape sentence for the time defendant was incarcerated in St. Louis County.

We find our conclusion in this regard to be in accord with authority in those jurisdictions with statutes similar to ours on the subjects

of credit for time served and consecutive sentencing for escape. In *People v. Bachman* (1973), 50 Mich. App. 682, 213 N.W.2d 800, the court concluded that the Michigan statute which provided that a sentence for escape not commence until the sentence pending at the time of the escape was completed constituted an exception to Michigan's statute requiring credit to be given for time served for all offenses. In *Gasque v. State* (1980), 45 Md. App. 471, 413 A.2d 1351, the court relied upon *Bachman* in reasoning that the Maryland escape consecutive-sentencing statute controlled the Maryland credit-for-time-served statute. In *Danforth v. State* (Fla. App. 1975), 316 So. 2d 304, also relied upon by the *Gasque* court, the court held that the Florida consecutive-sentencing statute for the offense of escape constituted an overriding exception to the Florida credit-for-time-served statute.

■ We note parenthetically that our analysis of the instant issue is not dependent upon whether defendant's Missouri arrest was nominally for escape. The Missouri governor's warrant does not appear of record; however, the record does include copies of an information filed August 18, 1980, in the circuit court of Randolph County, Illinois, and an Illinois arrest warrant, issued August 28, 1980. Both recite a charge of escape against defendant. Based on those documents, we assume without deciding that the fugitive warrant also was based on the charge of escape. Regardless of the wording of the extradition warrant, it does not affect our conclusion that the legislature did not intend that a defendant be given credit on his consecutive sentence for escape where a prior sentence being served at the time of the escape has not been completed.

Defendant suggests that it is somehow significant that the State failed to show that defendant had been credited, against his burglary sentence, for the time served in St. Louis County. Assuming that defendant should have received credit against his burglary sentence, we do not perceive the record's silence on the subject as requiring the presumption that defendant received no credit on the burglary sentence. In any event, it was defendant's escape conviction and sentence, not computation of the burglary sentence, which was before the trial court and is now before this court.

Next, defendant contends that the 12-year sentence for escape was excessive. Defendant urges that the court failed to consider that "there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense." Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.1(a)(4).

At trial, defendant presented evidence tending to show that he left the honor farm because he needed medical treatment for an in-

jured nose and a lump on his chest. An honor farm dormitory officer testified that defendant had mentioned the lump to him. Defendant's mother testified that she saw defendant at Menard on the day of his escape; that his nose was broken and stopped up; and that she told him to see a doctor about the chest lump because cancer runs in the family. Defendant testified that he was attacked while in St. Clair County jail in March of 1980; that he lost some teeth, his eye was darkened, and his nose was smashed to the side so that he could not breathe through it; also, that he was frightened by the chest lump, which did not hurt but was the size of a half-dollar. Defendant testified that he received no medical treatment at Menard other than observation and stated: "It was worrying me to death ***. I had an uncle die of cancer and my mother got it and here I got a knot." Defendant testified that when he left Menard he went to St. Louis City Hospital but was frightened away by the police officers present. He related that he called Barnes Hospital but realized that he could not innocently explain why he could not agree to pay them 10% of his wages. Defendant testified that he had since had surgery and that the lump had been removed and his nose had been straightened and rebuilt. On cross-examination, defendant admitted that he had received no medical treatment between the August 10, 1980, escape and his arrest in March of 1981. Defendant testified that he would not have left Menard if he had received proper treatment there. Dr. William Mohlenbrock, medical director at Menard, testified from his records that he saw defendant on June 24, 1980, and that defendant had been concerned about his eyes, not a chest lump or his nose. Dr. Mohlenbrock testified that a nasal septoplasty such as was done on defendant was not normally done for minor injuries and that such surgery was not done at Menard.

The "judgment order" in the common law record on appeal includes a "checklist" of the statutorily recognized mitigating and aggravating factors to be considered by the sentencing court (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.1, 1005—5—3.2), which list indicates the factors found to be present by the trial court. The only mitigating factor checked by the sentencing court is that defendant's criminal conduct neither caused nor threatened serious physical harm to another. Those unchecked include the factor urged by defendant on appeal. Aggravating factors checked by the trial court were (1) defendant has a history of prior delinquency or criminal activity, and (2) the sentence is necessary to deter others from committing the same crime. The court noted in support of the extended term imposed that defendant had been previously convicted in Illinois of the same or

greater class felony within 10 years.

Escape from a penal institution by a convicted felon is a Class 2 felony (Ill. Rev. Stat. 1981, ch. 38, par. 31—6(a)) for which the offender may be sentenced to a fixed term of imprisonment of not less than three and not more than seven years. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(5).) Where the accused has been convicted of the same or greater class felony in Illinois within the previous 10 years, an extended sentence of not less than seven and not more than 14 years' imprisonment may be imposed. Ill. Rev. Stat. 1981, ch. 38, pars. 1005—8—2(a), 1005—5—3.2(b).

■■ ■ We are authorized to reduce the sentence imposed by the trial court only if the court abused its discretion in imposing that sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 884; *People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541, 548.) Although the instant sentence is very close to the maximum permissible under the statute, we are unable to find it lacking in support on the record. From defendant's presentence report we glean the following prior convictions: 1955, petty larceny; 1966, stealing under $50; 1971, stealing $50 or over; 1972, mail theft; 1976, unlawful use of a weapon; 1977, common assault; 1977, stealing over $50 (three counts) and stealing under $50; 1978, escaping custody before conviction; and 1979, burglary, the offense for which he was imprisoned at the time of his escape. Regarding the 1978 offense, defendant denied the assertion in the presentence report that he pleaded guilty to that charge; however, he did not deny the conviction. We conclude that defendant's prior convictions provided substantial support for the very severe sentence imposed.

■ Defendant argues, however, that the trial court erred in failing to accord "some weight" to defendant's belief that he had to escape to obtain needed medical treatment. Since the sentencing judge also presided at trial and gave, over the State's objection, a jury instruction regarding the defense of necessity, the judge's failure to indicate that factor on the sentencing factor checklist suggests that the court was not convinced of the sincerity of defendant's allegation that he escaped in order to obtain medical treatment. The sentencing court need not accept the defendant's allegations regarding mitigating matters at face value in the presence of evidence to the contrary. (See *People v. Lloyd* (1981), 92 Ill. App. 3d 990, 995, 416 N.E.2d 371, 375.) Here, the trial court had heard defendant testify that he had not received medical treatment during the entire seven months he was at large. The court properly could have concluded that this evidence cast serious doubt on the significance of defendant's medical needs as well

as defendant's perception of the significance of those needs. Under these facts, it was for the sentencing court to determine what weight, if any, should be accorded defendant's allegation of necessity.

For the foregoing reasons, the judgment of the circuit court of Randolph County is affirmed.

Affirmed.

JONES and KARNS, JJ., concur.