THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOROTHY TAYLOR *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 81—3102

Opinion filed June 15, 1983.

James J. Doherty, Public Defender, of Chicago (Robert Guch, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and David A. Shapiro, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

After a bench trial, defendants Dorothy and Andre Taylor were found guilty of the murders of Derrick Montgomery and Cedrick Maltbia and of armed violence and sentenced to natural life imprisonment. They appeal, contending: (1) section 5—8—1(a)(1)(c) of the Unified Code of Corrections imposing mandatory natural life imprisonment is unconstitutional (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c)) and (2) they were improperly convicted of both murder and armed violence.

On January 12, 1981, Derrick Montgomery, Cedrick Maltbia, Enicha Washington and Michael Simmons were at Patti Washington's apartment at 826 North Sedgwick in Chicago. At that time, defendant Dorothy Taylor and her sister Virgie entered the apartment. Virgie went into a bedroom with Montgomery to discuss his return of her jewelry and, as they exited the room, he struck Virgie. At this, Dorothy pulled out a gun, gave it to Virgie and ordered her to shoot Montgomery. Virgie complied, firing twice at Montgomery. Dorothy then opened the front door and admitted codefendant Andre (the son of Virgie), who was armed with a shotgun.

A few moments later, Dorothy and Virgie started to leave the apartment. Defendant Dorothy Taylor then told her nephew Andre to "kill everyone in the apartment, don't leave nobody." Andre shot Cedrick Maltbia twice at close range with a shotgun. Andre then turned

toward Michael Simmons, who had grabbed Enicha Washington in order to protect her. Andre pumped the shotgun in their direction. Dorothy Taylor, however, intervened, telling Andre that they should be spared. Andre then turned to Derrick Montgomery and shot him once.

Defendants were sentenced for the murders under section 5—8—1(a)(1)(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(c)), which provides:

"Sentence of Imprisonment for Felony. (a) A sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:

(1) for murder *** (c) if the defendant has previously been convicted of murder under any state or federal law or is found guilty of murdering more than one victim, the court *shall* sentence the defendant to a term of natural life imprisonment; ***." (Emphasis added.)

Section 3—3—3(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1003—3—3(d)) provides:

"(d) No person serving a term of natural life imprisonment may be paroled or released except through executive clemency."

The able and experienced trial judge denied defendants' motion to reconsider the sentences. However, he expressed with eloquence his belief that defendants are not beyond rehabilitation; that he had no choice or discretion with reference to the sentence; and that he, in the exercise of the judicial function, would not have imposed these sentences.

Defendants contend that the natural life sentences imposed under section 5—8—1(a)(1)(c) violate article I, section 11, of the 1970 Illinois Constitution: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. ***."

If section 5—8—1(a)(1)(c) is mandatory, we agree.

The power of the legislature to determine punishment is subject to constitutional limitations. (*People v. Grant* (1978), 71 Ill. 2d 551, 377 N.E.2d 4.) A sentence imposed by a trial court will not be disturbed unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose. The spirit and purpose of the law are upheld when a sentence in conformity with article I, section 11, reflects the seriousness of the offense and gives adequate consideration to the rehabilitative potential of the

defendant. *People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848; *People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677; *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

The power to impose sentence is exclusively a function of the judiciary. (*People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855.) A reasoned judgment as to the proper sentence to be imposed must be based upon the particular circumstances of each case. Such judgment depends upon many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. The trial judge, in the course of the trial and the sentencing hearing, has an opportunity to consider these factors. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

In *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541, the court said that the trial judge is "charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and rehabilitation of the offender."

If subsection (c) of section 5—8—1(a)(1) is mandatory, then the trial judge is precluded from considering any mitigating or aggravating factors and thus being able to strike that appropriate balance.

Contrasted to subsection (c) is the language of subsection (b) of that section:

"(b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present, the court *may* sentence the defendant to a term of natural life imprisonment ***." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1(a)(1)(b).)

Subsection (b) thus allows the trial judge to consider mitigating and aggravating factors to arrive at an appropriate balance.

Cases which have upheld natural life sentences under subsection (b) all point to the fact that the sentencing judge was able to use discretion in imposing sentence.

In *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344, the court upheld, against an attack under article I, section 11, a natural life sentence without parole imposed under subsection (b). The trial court had considered in detail the aggravating and mitigating factors in sections 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 9—1) and 5—5—3.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.1). The court, recognizing the discretionary power conferred on the trial judge by subparagraph (b),

observed (88 Ill. 2d 482, 492-93):

"The Unified Code of Corrections vests a wide discretion in sentencing judges in order to permit reasoned judgments as to the penalty appropriate to the particular circumstances of each case. (*People v. Bolyard* (1975), 61 Ill. 2d 583.) \*\*\*

Defendant argues, however, that our constitution requires the trial court to make specific findings concerning the defendant's rehabilitative potential. The relevant section provides: 'All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.' (Ill. Const. 1970, art. I, sec. 11.) The sentencing judge is always, as we stated in *Cox* [82 Ill. 2d 268], 'charged with the difficult task of fashioning a sentence which would strike the appropriate balance between protection of society and rehabilitation of the offender.' (82 Ill. 2d 268, 280.) That task can be an agonizing one to the solution of which a trial judge may well devote substantial amounts of time and thought."

In *People v. Merchel* (1980), 91 Ill. App. 3d 285, 414 N.E.2d 804, *appeal denied* (1981), 83 Ill. 2d 573, this court upheld a natural life sentence under subparagraph (b) against a claim of unconstitutionality under article I, section 11. The court was careful to point out that the statute was not mandatory; thus, it did not totally ignore the rehabilitative potential of a defendant. The court said (91 Ill. App. 3d 285, 294):

"We first reject the notion that the natural life provision of section 5—8—1(a)(1) requires that the judge focus solely on the nature of the offense, without considering the defendant's rehabilitative potential. The statute provides that the judge 'may' impose a natural life sentence where the requisite findings are made; 'brutal or heinous behavior' is only a threshold requirement for imposition of natural life. Natural life is not mandated whenever those factors are present, regardless of other circumstances. In fact, subsection (b) of section 5—8—1 explicitly authorizes consideration of mitigating factors imposing a sentence under the statute. Many of these mitigating factors reflect on the rehabilitative potential of the defendant."

The court further observed (91 Ill. App. 3d 285, 295):

"We are careful to note, however, that while the legislature did not mandate a natural life sentence, neither did it leave the sentencing court with unbridled discretion. In imposing sentence on any felony, factors in aggravation and mitigation are

to be considered, as well as 'any other such factors as the judge shall set forth on the record that are consistent with the purposes and principles of sentencing set out in this Code.' (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(b).) To construe the word 'may' as carte blanche for imposition of a natural life sentence without consideration of all statutory sentencing factors, would violate the concept of limited discretion embodied in the Sentencing Act. However, since the sentencing court's discretion in imposing a natural life sentence for a brutal or heinous murder is modified by these statutory factors, the provision violates neither due process nor equal protection."

This court has reached the same conclusion in a number of other well-reasoned opinions: *People v. Kloiber* (1981), 95 Ill. App. 3d 1061, 420 N.E.2d 870, *appeal denied* (1981), 85 Ill. 2d 571; *People v. Nobles* (1980), 83 Ill. App. 3d 711, 404 N.E.2d 330, *appeal denied* (1980), 81 Ill. 2d 597; *People v. Bartik* (1981), 94 Ill. App. 3d 696, 418 N.E.2d 1108, *appeal denied* (1981), 85 Ill. 2d 567.

In *People v. Bush* (1981), 103 Ill. App. 3d 5, 430 N.E.2d 514, relied on by the State, the court upheld consecutive natural life sentences under subsection (b) for two murders which the trial court found were accompanied by "exceptionally brutal or heinous behavior indicative of wanton cruelty," the court holding that article I, section 11, was not violated because the trial court had considered both the seriousness of the crime and the defendant's rehabilitative potential. The court's statement (103 Ill. App. 3d 5, 15): "There can be no challenge to a single sentence of natural life imprisonment in this case because the sentence is mandated by section 5—8—1(a)(1), (c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1), (c)) for the murder of more than one victim" was not necessary to the decision; nor did it consider the fact that under subsection (c), if mandatory, the trial court could not consider the defendant's rehabilitative potential.

Although a natural life sentence without parole was not involved, the court in *People v. Rickard* (1981), 99 Ill. App. 3d 914, 425 N.E.2d 1317, *appeal denied* (1982), 88 Ill. 2d 554, vacated a murder sentence of 100 to 300 years because it effectively negated any possibility of defendant's rehabilitation.

Even though a death sentence differs in kind from a mandatory life sentence, the reasoning of the Supreme Court of the United States applies by analogy. That court was careful to point out that, in order for a death sentence to be constitutional as not constituting "cruel and unusual punishment" under the eighth and fourteenth

amendments, there must be the individualized consideration of mitigating factors. (*Eddings v. Oklahoma* (1982), 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869; *Woodson v. North Carolina* (1976), 428 U.S. 280, 49 L. Ed. 2d 944, 96 S. Ct. 2978.) In *Gregg v. Georgia* (1976), 428 U.S. 153, 49 L. Ed. 2d 859, 96 S. Ct. 2909, the court upheld the death sentence because the jury was permitted to consider aggravating and mitigating circumstances and a review by the State supreme court was required.

■ From the above Illinois and Federal authorities, we hold that the sentencing authority must have the right to consider mitigating and aggravating factors. This right becomes all the more important where, as in the case at bar, there is no possibility of parole. In *Rummel v. Estelle* (1980), 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133, the court, in upholding a Texas statute imposing a life sentence for the commission of three offenses, relied in large measure on the fact that the defendant had the possibility of parole.

Nor do we believe that the Governor's power to grant reprieves, commutations and pardons under article V, section 12, of the 1970 Illinois Constitution is a sufficient substitute for the sentencing judge's consideration of a defendant's rehabilitative potential.

Further, even though a defendant's potential for rehabilitation may be so minimal that it need not be reflected in the sentence actually imposed (*People v. Shumate* (1981), 94 Ill. App. 3d 478, 419 N.E.2d 36, *appeal denied* (1981), 85 Ill. 2d 573) and even though the legislature has the authority to set the nature and extent of penalties and can determine that a recidivist should be dealt with more harshly (*People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 416 N.E.2d 259), penalties imposed by such legislation are subject to challenge when the penalty "is clearly in excess of the very broad and general constitutional limitations applicable." *People ex rel. Carey v. Bentivenga* (1981), 83 Ill. 2d 537, 542; *Rummel v. Estelle.*

Where that type of penalty is upheld, it is clear that the rehabilitative potential of the individual has received consideration.

For example, in *People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 413 N.E.2d 1269, the court upheld section 5—12 of the Juvenile Court Act, commonly referred to as the Habitual Juvenile Offender Act (Ill. Rev. Stat. 1981, ch. 37, par. 705—12), which provides that a juvenile who is adjudicated a delinquent for a third time of having committed an offense which would be a felony if committed by an adult shall be confined until he reaches the age of 21. The Act was challenged on the ground that the mandatory confinement to age 21 violated the rehabilitative objective of article I, section 11. The court

rejected the challenge (83 Ill. 2d 67, 79-80):

"Under the Act, the court is dealing with a juvenile who has allegedly committed three offenses within what is necessarily a short period of time. Significantly, the two predicate adjudications afforded the juvenile the opportunity to have a hearing at which he *could* present mitigating evidence and at which the trial judge *could* exercise his discretion in determining the appropriate disposition. \*\*\* The legislature could legimately conclude that an individual who has committed three such offenses has benefited little from the rehabilitative measures of the juvenile court system and exhibits little prospect for restoration to meaningful citizenship within that system as it had heretofore existed. The rehabilitative purposes of the system are not completely forsaken, but after the commission by an individual of a third serious offense, the interest of society in being protected from criminal conduct is given additional consideration. We consider it to be entirely reasonable and constitutionally permissible for the legislature to so provide and to authorize the disposition specified in the legislative scheme it has developed."

Under the philosophy underlying the Juvenile Court Act, mitigating factors were required to be considered for each of the first two adjudications of delinquency. It was only because of a third adjudication that the legislature could properly conclude that the juvenile, as the court stated, "has benefited little from the rehabilitative measures of the juvenile court system and exhibits little prospect for restoration to meaningful citizenship." In the case at bar, however, there is no prior consideration of mitigating or rehabilitative factors; upon the mere proof of two murders, the statute, if mandatory, requires a trial court to impose a natural life sentence.

In *People v. Perry* (1980), 81 Ill. App. 3d 422, 401 N.E.2d 1263, *appeal denied* (1980), 81 Ill. 2d 597, *cert. denied* (1981), 451 U.S. 983, 68 L. Ed. 2d 839, 101 S. Ct. 2313 (relied on by the State), this court rejected the contention that Class X legislation making all sentences determinative, eliminating the prison review board's discretion in granting parole and by requiring minimum mandatory sentences, has effectively abandoned rehabilitation as an objective of sentencing. The court said that the fallacy of the contention was the assumption that early release and parole are the *only* means of rehabilitation. It felt that the methods of rehabilitating criminal offenders was a question peculiarly suitable for legislative investigation, analysis and action. But in the Class X legislation, mitigating factors were not completely eliminated as is done by subparagraph (c), if mandatory.

■ We conclude that if the word "shall" in section 5—8—1(a)(1)(c) is construed as mandatory, that provision is unconstitutional.

*People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855, states the rule to be applied to the case at bar. There, the court, after distinguishing *People v. Youngbey* (1980), 82 Ill. 2d 556, 413 N.E.2d 416 (in which it had held that the mandatory provision of section 5—3—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—3—1), requiring a presentence investigation and report, was within the power of the legislature because it did not infringe on the inherent powers of the judiciary or conflict with a rule of the supreme court), held that to construe as mandatory sections 5—4—1(c) and 5—8—1(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—4—1(c), 1005—8—1(b)), thus imposing on the trial judge the duty to specify on the record the reasons for imposing a particular sentence, would render the provisions an unconstitutional invasion of the inherent power of the judiciary in violation of the separation of powers clause of the Illinois Constitution (Ill. Const. 1970, art. II, sec. 1). The court said (93 Ill. 2d 155, 161-62):

"Article VI, section 1, of the Illinois Constitution of 1970 provides: 'The judicial power is vested in a Supreme Court, an Appellate Court and Circuit Courts.' Judicial power is not defined in the Constitution, but all such power is exclusively and exhaustively granted to the courts. (*People v. Cox* (1980), 82 Ill. 2d 268, 274; *People v. Jackson* (1977), 69 Ill. 2d 252, 256.) It is, of course, indisputable that the power to impose sentence is exclusively a function of the judiciary. (*People v. Phillips* (1977), 66 Ill. 2d 412, 415; *People v. Montana* (1942), 380 Ill. 596, 608.) To construe the section of the statute under consideration as mandatory would permit a legislative infringement upon the exercise of the judicial function of imposing sentence.

Article II, section 1, of the Illinois Constitution of 1970 provides: 'The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another.' The General Assembly has the power to enact laws governing judicial practice only where they do not unduly infringe upon the inherent powers of the judiciary. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 59; *People v. Callopy* (1934), 358 Ill. 11.) Furthermore, it is the undisputed duty of the court to protect its judicial powers from encroachment by legislative enactments, and thus preserve an independent judicial department. *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 149.

A statute should be interpreted so as to avoid a construction

which would raise doubts as to its validity. (*Morton Grove Park District v. American National Bank & Trust Co.* (1980), 78 Ill. 2d 353, 363.) It is our duty to construe acts of the legislature so as to affirm their constitutionality and validity, if it can be reasonably done, and further if their construction is doubtful, the doubt will be decided in favor of the validity of the law challenged. *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Com.* (1969), 42 Ill. 2d 385, 389; *Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 561.

In the instant case, in contrast to *Youngbey*, it is clear that the pronouncement of sentence is at the heart of the judicial function. A construction which would hold sections 5—4—1(c) and 5—8—1(b) to constitute a mandatory requirement would clearly render the provisions an unconstitutional invasion of the inherent power of the judiciary. However, a construction which rendered the sections to be solely directory would not.

In *Youngbey*, in construing the import of the term 'shall,' we observed:

'Generally, the use of the word "shall" is regarded as indicative of a mandatory intent. [Citations.] We recognize, however, that this is not an inflexible rule; the statute may be interpreted as permissive, depending upon the context of the provision and the intent of the drafters.' (*People v. Youngbey* (1980), 82 Ill. 2d 556, 562.)

In the instant case, to hold that the term 'shall' denominates a mandatory requirement imposed upon the judiciary at sentencing would be to find the statute to be constitutionally invalid. As we presume that the legislature intended to enact a valid statute, we read 'shall' in this context as permissive rather than mandatory."

We, as did the supreme court in that case with reference to subsection (b) of the same section that is before us in the case at bar (section 5—8—1), read the "shall" in subsection (a)(1)(c) as permissive to avoid a holding that it is constitutionally invalid. The sentences of natural life, therefore, are vacated and the cause remanded for further sentencing procedure as to the murder convictions in conformity with the applicable provisions of the Unified Code of Corrections.

■ Defendants also contend that their convictions for armed violence should be vacated because they and their murder convictions arose from the same act. We disagree. The evidence shows that the two victims died of multiple gunshot wounds. Thus, the offenses arose

not from a single act, as defendants contend, but from a series of closely related or incidental acts. The victims were shot a short time apart, not simultaneously. Under these circumstances, defendants were properly convicted of armed violence. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273; *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.

The murder convictions and the armed violence convictions are affirmed. The cause is remanded for resentencing on the murder convictions and for further consideration of sentences on the armed violence convictions.

Affirmed in part, vacated in part and cause remanded.

McGILLICUDDY and WHITE, JJ., concur.