THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY BOSWELL, Defendant-Appellant.

First District (4th Division)   No. 83—169

Opinion filed March 14, 1985.

Steven Clark and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Defendant, Jeffrey Boswell, was found guilty following a jury trial of murder. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1.) He was sentenced to a term of natural life imprisonment. (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—8—1(a)(1), (c).) Defendant raises several issues on appeal. The only issue we deemed dispositive is the question concerning the trial court's refusal to ask certain questions tendered by defense counsel during *voir dire*.

As defendant does not contest the sufficiency of the evidence to support his conviction, we summarize the evidence presented at trial as follows. On September 9, 1980, at about 10:30 p.m., the victim, Dorothy Guyton, along with Norine Williams, Nancy Wamble and two others, were standing on a street corner when they were approached by a man identified by Williams and Wamble as the defendant. The

defendant made a derogatory remark and an argument ensued between the defendant and the victim. At that point, the defendant pulled out a revolver. The argument subsided a few minutes later and the defendant withdrew his gun. A bottle of liquor was then purchased and after it was consumed by the group, the victim's four friends left and went upstairs to Williams' apartment, a short distance away. Shortly thereafter, a gunshot was heard, and the victim was found lying at the bottom of the stairs leading to Williams' apartment, mortally wounded.

On September 24, 1980, Williams and Wamble identified defendant from a group of photographs shown to them by police. On October 1, a police officer prepared a sworn complaint for preliminary examination charging the defendant with the murder of Guyton and appeared before a circuit court judge in order to secure a warrant for defendant's arrest. (See Ill. Rev. Stat. 1983, ch. 38, par. 107—9.) A warrant was issued, and defendant was arrested the next day. Defendant was immediately placed in a lineup and was identified by Williams and Wamble. An indictment charging the defendant with murder was filed on October 3, 1980.

Defendant introduced testimony that he was noticeably limping subsequent to his interrogation by police. Defendant did not testify.

Prior to *voir dire* examination of the jurors, defense counsel submitted a list of supplemental questions, in accordance with Supreme Court Rule 234, which he sought to have the court ask during *voir dire*. (See 94 Ill. 2d R. 234.) Three of those questions concerned the attitude of the jurors towards the failure of a defendant to testify in his own behalf, whether the jurors could render a verdict of not guilty if the State failed to prove its burden beyond a reasonable doubt, and whether the jurors understood the concept that the defendant did not have to offer any evidence in his own behalf but was presumed innocent and had to be proved guilty by the State beyond a reasonable doubt. The trial court rejected these questions on the basis that they covered matters of law about which the jury would be later instructed and that the trial court's question to jurors as to whether they could follow the law as given to them by the trial court was sufficient. Defendant argues that under the recent Illinois Supreme Court decision of *People v. Zehr* (1984), 103 Ill. 2d 472, 468 N.E.2d 1062, the trial court's refusal to ask these questions or otherwise probe the subject matter raised by these questions was reversible error.

*Zehr* considered the effect of a trial court's failure to ask the same three *voir dire* questions submitted by a defendant regarding the State's burden of proof, the failure of the defendant to testify in his

own behalf, and the presumption of the defendant's innocence. In *Zehr*, the State had argued that the trial court properly refused to ask these questions as they pertain to matters of law or instructions, which precluded the trial court under Rule 234 from posing the questions tendered. Also, the State there had argued, as it argues here, that jury instructions adequately advised the jurors regarding the subject matter covered by defense counsel's proposed questions. (103 Ill. 2d 472, 476-77, 469 N.E.2d 1062.) Rejecting the State's arguments, the supreme court characterized each of these questions as going to the heart of a juror's bias or prejudice, the failure to ask even one of which is sufficient to deprive the defendant of his right to a fair and impartial jury. The court indicated that in order to assure that jurors possess the requisite impartiality, it was essential that jurors be informed that a defendant is presumed innocent, that he is not required to offer any evidence in his own behalf, that he must be proved guilty beyond a reasonable doubt, and that his failure to testify in his own behalf cannot be held against him. (103 Ill. 2d 472, 477, 469 N.E.2d 1062.) The court emphasized that if a juror has a prejudice against any of these basic guarantees, jury instructions on these concepts given at the end of the trial would have "little curative effect." (103 Ill. 2d 472, 477, 469 N.E.2d 1062.) Although the questions need not be asked in the exact form submitted, the court concluded that the failure to probe the subject matter of the questions proposed results in reversible error. 103 Ill. 2d 472, 477-78, 469 N.E.2d 1062.

The State argues that the trial court's comments to the entire venire prior to *voir dire* examination and during the individual *voir dire* adequately probed the jurors for any possible bias or prejudice in compliance with the dictates of *Zehr*. Pursuant to Supreme Court Rule 234, the trial court conducted *voir dire* examination of prospective jurors. Prior to the individual *voir dire*, the trial court addressed the entire venire, in which he indicated that a defendant is presumed innocent of the charges against him, that this presumption continues throughout the trial, and that this presumption is only overcome by proof beyond a reasonable doubt introduced by the State. If the presumption is not overcome, the trial court instructed the jurors, the defendant must be found not guilty. Continuing, the trial court told them that the defendant need not prove himself innocent. Finally, the jurors were told that they must be able to follow the law as given to them by the trial court. In examining the various panels, the court specifically asked jurors if after being instructed on the general principles of law governing criminal cases they would follow the law as given them by the court even though they might personally disagree with it.

■■ After considering the trial court's comments to the jury, we believe that under the rule announced in *Zehr* those questions concerning the presumption of defendant's innocence and the absence of any burden of proof on the defendant to prove himself innocent, and the State's burden to establish the defendant's guilt beyond a reasonable doubt tendered by defense counsel were sufficiently broached in this case to alleviate any error in these respects. However, while the subject matter of these important guarantees was adequately probed, we cannot also conclude that the matter regarding the defendant's failure to testify in his own behalf was asked or otherwise covered during *voir dire*. The principle that a defendant's failure to testify in his own behalf cannot be held against him is perhaps the most critical guarantee under our criminal process, and it is vital to the selection of a fair and impartial jury that a juror understand this concept. Given the supreme court's pronouncement that each of these questions is required to be covered during *voir dire* when requested, we are compelled to reverse the defendant's conviction and remand the cause for a new trial. See *People v. Zehr* (1984), 103 Ill. 2d 472, 477-78, 469 N.E.2d 1062; see also *People v. Britz* (1984), 128 Ill. App. 3d 29, 40, 470 N.E.2d 1059, *appeal allowed* (1984), 101 Ill. 2d 583; *cf. People v. Estes* (1984), 127 Ill. App. 3d 642, 655, 469 N.E.2d 275; but see *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137.

In reaching this holding, we reject the State's initial contention that the *Zehr* decision, decided three years after the trial in the instant case occurred, should be applied prospectively to this case.

As a general rule, a decision will be applied retrospectively unless the court expressly declares its decision to be a " 'clear break with the past,' " (*United States v. Johnson* (1982), 457 U.S. 537, 549, 73 L. Ed. 2d 202, 213, 102 S. Ct. 2579, 2587; *People v. Tisler* (1984), 103 Ill. 2d 226, 246, 469 N.E.2d 147), such as when the court explicitly overrules its own past precedent, disapproves a practice it had previously sanctioned, or overturns a well-established body of lower court authority. (*People v. Seats* (1984), 121 Ill. App. 3d 637, 639, 460 N.E.2d 110.) Accordingly, the State maintains that *Zehr* is a clear break from past supreme court interpretation of Rule 234 so that prospective application of *Zehr* is required.

■■ While it is within the court's inherent powers to give a decision prospective or retrospective application (*Lane v. Sklodowski* (1983), 97 Ill. 2d 311, 319, 454 N.E.2d 322), there is no indication in *Zehr* that the supreme court intended its decision to be applied prospectively. The State relies principally upon Justice Ryan's dissenting opinion in *Zehr* to support its argument that the majority holding suggests a break

with past supreme court authority relating to Rule 234. (*People v. Zehr* (1984), 103 Ill. 2d 472, 481, 469 N.E.2d 1062 (Ryan, J., dissenting).) However, the State's reliance on the dissenting justice's view of the relationship between Rule 234 and the majority opinion is irrelevant in the absence of any express statement by the majority that it was breaking with past interpretation of Rule 234. *Zehr* expressly overruled no clear past precedent. Nor did *Zehr* disapprove an established practice that the court had previously sanctioned. The court's own citation of Rule 234 indicates that its ruling was not an abandonment or modification of its prior treatment of its own rule. Nor did it expressly overrule lower court authority which had applied Rule 234. As there is nothing in *Zehr* which suggests that it should be treated as an exception to the general rule of retroactivity, we conclude that *Zehr* has retrospective application.

As this cause must be remanded for a new trial, we shall address those additional issues likely to arise again.

■■ The first issue we shall consider is whether the lineup identification testimony should have been suppressed on the ground that defense counsel was not present at the lineup.

The right to counsel assured by the sixth amendment attaches at the time that "adversary judicial proceedings" are initiated against a person by way of formal charge, preliminary hearing, indictment, information, or arraignment. (*Kirby v. Illinois* (1972), 406 U.S. 682, 688-89, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1881-82; *People v. Burbank* (1972), 53 Ill. 2d 261, 272, 291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) Defendant maintains that the lineup identification must be suppressed because the issuance of an arrest warrant following the filing of a criminal complaint and the defendant's subsequent arrest pursuant thereto constituted a "formal charge" and thereby activated his constitutional right to have counsel present during the lineup.

In the instant case, no information or indictment was filed at the time of the lineup. An application for the issuance of an arrest warrant in the form of a complaint for preliminary examination accusing the defendant of murder was sworn to and filed by a police officer. (See Ill. Rev. Stat. 1983, ch. 38, par. 107—9.) The State's Attorney's office reviewed the form of the application and approved the issuance of an arrest warrant. The police officer then presented the complaint to a circuit court judge, and an arrest warrant was issued on the basis of that complaint.

The State argues that the mere filing of a criminal complaint by a police officer in order to obtain a warrant for a defendant's arrest,

much like a warrantless arrest, does not amount to the initiation of "adversary judicial proceedings." The State maintains that whether "adversary judicial proceedings" commence with the filing of a complaint is dependent upon the degree of prosecutorial input. The State draws a distinction between the filing of a complaint by or at the direction of the prosecutor, which may constitute the commencement of adversary judicial proceedings, and the filing of such a complaint by a police officer in order to secure an arrest warrant, as here, with no indication of any significant prosecutorial involvement.

In resolving this issue, we must look to the purpose with which the right to counsel serves. The Supreme Court has recognized that the "core purpose" of the counsel guarantee is to assure aid at trial, "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor." (*United States v. Ash* (1973), 413 U.S. 300, 309, 37 L. Ed. 2d 619, 626, 93 S. Ct. 2568, 2573.) Similarly, at certain "critical" pre-indictment proceedings, the Supreme Court has extended an accused's right to counsel (*Kirby v. Illinois* (1972), 406 U.S. 682, 688-89, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882), recognizing that "the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both" (*United States v. Ash* (1973), 413 U.S. 300, 310, 37 L. Ed. 2d 619, 627, 93 S. Ct. 2568, 2573), in a situation where the results of the confrontation "might well settle the accused's fate and reduce the trial itself to a mere formality." (*United States v. Wade* (1967), 388 U.S. 218, 224, 18 L. Ed. 2d 1149, 1156, 87 S. Ct. 1926, 1930, quoted in *United States v. Gouveia* (1984), 467 U.S. 180, 189, 81 L. Ed. 2d 146, 155, 104 S. Ct. 2292, 2298.) It is only at that time "that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law." (*Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 418, 92 S. Ct. 1877, 1882.) While the court has indicated the various contexts in which the right to counsel is implicated, the court has emphasized that "[t]he initiation of judicial criminal proceedings is far from a mere formalism." 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417-18, 92 S. Ct. 1877, 1882.

While several Illinois appellate courts have held that the right to counsel attaches upon the filing of a criminal complaint or information and the issuance of an arrest warrant (*People v. Jumper* (1983), 113 Ill. App. 3d 346, 349, 447 N.E.2d 531; *People v. Faulkner* (1980), 86 Ill. App. 3d 136, 139, 407 N.E.2d 126; *People v. Giovanetti* (1979), 70 Ill.

App. 3d 275, 282, 387 N.E.2d 1071), no Supreme Court nor Illinois Supreme Court decision has resolved the issue of whether the sixth amendment right automatically attaches upon the filing of a criminal complaint. (See *People v. Owens* (1984), 102 Ill. 2d 88, 101, 464 N.E.2d 261; *People v. Jones* (1984), 128 Ill. App. 3d 842, 848, 471 N.E.2d 590.) However, it has never been held that the right to counsel attaches at the time of the arrest. *United States v. Gouveia* (1984), 467 U.S. 180, 189-90, 81 L. Ed. 2d 146, 155-56, 104 S. Ct. 2292, 2299.

In Illinois, a warrantless arrest based on probable cause does not trigger the commencement of adversary judicial proceedings. (*People v. Martin* (1984), 121 Ill. App. 3d 196, 209, 459 N.E.2d 279; *People v. Agee* (1981), 100 Ill. App. 3d 878, 881-82, 427 N.E.2d 244.) The State's analogy between a warrantless arrest and an accused's arrest pursuant to an arrest warrant issued upon the filing of a criminal complaint may have some relevance in analyzing when the right to counsel attaches in this context. Under Illinois law, the standard for an arrest with a warrant and an arrest without a warrant is the same; both must be based upon a finding of probable cause. (Compare Ill. Rev. Stat. 1983, ch. 38, par. 107—2(c) (arrest without a warrant) with Ill. Rev. Stat. 1983, ch. 38, par. 107—9(c) (arrest with a warrant).) The procedure for securing an arrest warrant upon complaint is *ex parte*, in which the court makes a probable-cause determination that the person against whom the complaint was made has committed an offense. (Ill. Rev. Stat. 1983, ch. 38, par. 107—9(c).) Thus, in either situation the prosecutor does not necessarily become involved in the investigation of the accused. At this point, an indictment or information is then required in order to prosecute a felony offense. Ill. Rev. Stat. 1983, ch. 38, par. 111—2(a).

■ Instructive here are a number of Federal and out-of-State court decisions which have applied a flexible test in determining when the right to counsel attaches. (*United States v. Duvall* (2d Cir. 1976), 537 F.2d 15, *cert. denied* (1976), 426 U.S. 950, 49 L. Ed. 2d 1188, 96 S. Ct. 3173; *Lomax v. Alabama* (5th Cir. 1980), 629 F.2d 413, *cert. denied* (1981), 450 U.S. 1002, 68 L. Ed. 2d 205, 101 S. Ct. 1712; *Iowa v. Johnson* (Iowa 1982), 318 N.W.2d 417, *cert. denied* (1982), 459 U.S. 848, 74 L.Ed. 2d 95, 103 S. Ct. 106.) Focusing upon the degree to which the prosecutorial forces of the State have centered upon an individual, courts applying this standard have held that an arrest by itself, with or without a warrant, does not constitute the onset of adversary judicial proceedings absent proof of significant prosecutorial involvement in procuring the arrest warrant. Where the extent of the prosecutor's involvement in the procurement of the warrant is no more than in the assistance and preparation of the complaint (*United States v. Duvall*

(2d Cir. 1976), 537 F.2d 15, *cert. denied* (1976), 426 U.S. 950, 49 L. Ed. 2d 1188, 96 S. Ct. 3173), as in the instant case, the arrest must be characterized as purely investigatory without any commitment by the State at this point to pursue prosecution.

■ Applying this test to the facts of this case, absent proof of significant prosecutorial involvement in procuring the arrest warrant, we conclude that the defendant's sixth and fourteenth amendment rights to counsel had not attached at the time of the lineup. We reject the defendant's formalistic proposition that the issuance of an arrest warrant, with nothing further, is enough to transform an investigatory arrest into the trial-like confrontation with the prosecutor contemplated under the sixth amendment.

● 6 Finally, defendant contends that the mandatory imposition of a natural life sentence under sections 5—8—1(a)(1) and (c) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—8—1(a)(1), (c)) violates the Illinois Constitution (Ill. Const. 1970, art. I, sec. 11; art. II, sec. 1; art. VI, sec. 1) and the eighth and fourteenth amendments to the Federal Constitution (U.S. Const., amends VIII, XIV), since it requires the trial court to impose a life sentence without considering any mitigating or rehabilitative factors in the sentencing process.

Defendant relies upon *People v. Taylor* (1983), 115 Ill. App. 3d 621, 450 N.E.2d 1256, as support for his first assertion that if sections 5—8—1(a)(1) and (c) are read as a mandatory directive the sections would be unconstitutional as violative of section 11, article I, of the Illinois Constitution, which provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship," and would also violate the separation of powers clause under section 1, article II, as an invasion of the judiciary's function to impose sentences. However, this issue was recently decided adversely to the defendant's contention by our supreme court. (*People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059, *rev'd in part* (1983), 115 Ill. App. 3d 621, 450 N.E.2d 1256.) The supreme court in *Taylor* found that the statute does mandate a natural life sentence, and that providing for it does not unduly infringe upon judicial authority, nor does it violate the constitutionally stated objective of restoring offenders to useful citizenship. The court reasoned that as the legislature has the power to define offenses and fix penalties, unless the challenged penalties are clearly in excess of constitutional limitations, the section will be upheld as valid. 102 Ill. 2d 201, 205-06, 464 N.E.2d 1659.

■ Defendant next attacks the statute's mandatory and nondiscretionary character as being cruel and unusual punishment under the

eighth and fourteenth amendments as well as a violation of due process requirements. The cases cited by defendant, however, examine only the constitutionality of death penalty provisions. (See *Eddings v. Oklahoma* (1982), 455 U.S. 104, 71 L. Ed. 2d 1, 102 S. Ct. 869; *Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954; *Woodson v. North Carolina* (1976), 428 U.S. 280, 49 L. Ed. 2d 944, 96 S. Ct. 2978; *Roberts v. Louisiana* (1976), 428 U.S. 325, 49 L. Ed. 2d 974, 96 S. Ct. 3001.) Since these cases involve the death penalty, they are of limited usefulness in assessing the constitutionality of a mandatory term of life imprisonment. (See *Rummel v. Estelle* (1980), 445 U.S. 263, 272, 63 L. Ed. 2d 382, 390, 100 S. Ct. 1133, 1138 ("Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions [in death penalty cases] *** are of limited assistance in deciding the constitutionality of [other] punishment ***"); *Lockett v. Ohio* (1978), 438 U.S. 586, 605, 57 L. Ed. 2d 973, 990, 98 S. Ct. 2954, 2965.) The Supreme Court has stated that, although discretionary sentencing is an accepted practice, it is not constitutionally required in cases not involving the death penalty but rests on State public policy concerns enacted in sentencing statutes. (*Lockett v. Ohio* (1978), 438 U.S. 586, 602, 604-05, 57 L. Ed. 2d 973, 988, 989-90, 98 S. Ct. 2954, 2963, 2964-65 (plurality opinion); *Woodson v. North Carolina* (1976), 428 U.S. 280, 304, 49 L. Ed. 2d 944, 961, 96 S. Ct. 2978, 2991 (opinion of Stewart, Powell and Stevens, JJ.).) In *Taylor*, the Illinois Supreme Court recognized that the legislature considered the seriousness of the offense of multiple murders in determining that a mandatory minimum sentence of natural life imprisonment was required in the interest of public safety. *People v. Taylor* (1984), 102 Ill. 2d 201, 206, 464 N.E.2d 1659.

Furthermore, defendant's reliance on *Solem v. Helm* (1983), 463 U.S. 277, 77 L. Ed. 2d 637, 103 S. Ct. 3001, is misplaced. *Solem* did not involve a mandatory term of life imprisonment. The court did, however, hold that the imposition of a term of life imprisonment without the possibility of parole was unconstitutional where the sentence was imposed on a habitual offender who had an alcohol problem and who had committed no crimes of violence. The Supreme Court concluded that the defendant's sentence was "significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment." (463 U.S. 277, 303, 77 L. Ed. 2d 637, 658, 103 S. Ct. 3001, 3016.) On this basis, *Solem* is distinguishable, as the crime committed in this case involved a crime of substantial violence. Therefore, we reject the defendant's assertion that sections 5—8—1(a)(1) and (c) are unconstitutional as being cruel and unusual because they do not allow consideration of

mitigating circumstances. Similarly, we also reject defendant's challenge on due process grounds. The legislature has broad discretion in prescribing criminal penalties for offenses, subject only to the requirement that the statute be reasonably designed to remedy the evil the legislature deems to be a threat to the public health, welfare and safety. *People v. Mathey* (1983), 99 Ill. 2d 292, 298-99, 458 N.E.2d 499.

■■ Defendant's final contention with regard to sections 5—8—1(a)(1) and (c) is that defendant should only have been sentenced under sections 5—8—1(a)(1) and (b), which permit a discretionary natural life sentence (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—8—1(a)(1), (b)), because both sentencing provisions are applicable to the defendant's conduct. Sections 5—8—1(a)(1) and (b) state that the court may sentence a defendant to natural life if any of the aggravating factors from section 9—1 are present—in this case, where the defendant has been convicted of two or more murders. (See Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)(3).) Sections 5—8—1(a)(1) and (c) provide that when a defendant has been convicted of two or more murders the court *shall* sentence the defendant to natural life imprisonment. Based on the foregoing provisions, defendant contends that both provisions could apply to the instant case and are therefore ambiguous. Under the circumstances, the defendant contends that he therefore should have been sentenced under the more lenient permissive provision. We disagree.

One of the well-established principles of statutory construction is that a specific statutory provision controls as against the general provision on the same subject. (*People v. Maya* (1983), 119 Ill. App. 3d 961, 965, 457 N.E.2d 501; *People v. Matzker* (1983), 115 Ill. App. 3d 70, 72, 450 N.E.2d 395.) Sections 5—8—1(a)(1) and (b) are general provisions governing when a natural life sentence may be imposed for murder. Sections 5—8—1(a)(1) and (c) were specifically enacted to make a natural life sentence mandatory when a defendant has been convicted of two or more murders. Hence, the trial court properly imposed sentence under sections 5—8—1(a)(1) and (c) based on the defendant's prior conviction for murder.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

JOHNSON and ROMITI, JJ., concur.