UNITED STATES STEEL CORPORATION *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD, Respondent.

First District (5th Division) Nos. 57467, 57468 cons.

Opinion filed August 18, 1978.

Joseph S. Wright, Jr., and Clifton A. Lake, both of Rooks, Pitts, Fullagar & Poust, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Marvin I. Medintz, Assistant Attorney General, of counsel), for respondent.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is a judicial review of air pollution control regulations promulgated by the Illinois Pollution Control Board (hereinafter "Board"). Petitioners, United States Steel Corporation and Interlake, Inc. (hereinafter respectively "U.S. Steel" and "Interlake"), maintain this action under sections 29 and 41 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1029 and 1041), which, when taken together, provide for a direct review by this court of the validity of regulations adopted by the Board. The issues we consider in this review are: (1) what standard of review is applicable; (2) whether petitioners have waived the point that the regulations they challenge are arbitrary, capricious or unreasonable; and (3) whether the Administrative Review Act governs our review. We affirm. The pertinent facts follow.

On November 9, 1971, the Board commenced hearings on comprehensive air pollution control regulations proposed by the Environmental Protection Agency (hereinafter "Agency"). Over the following months such hearings were held at various locations throughout Illinois. On April 13, 1972, the Board adopted air pollution control regulations which included regulations numbered 103, 104, 105, 106, 107, 108 and 203.

U.S. Steel operates a steel production plant in Chicago which is known

as the "South Works" and which consists of 10 blast furnaces, an electric furnace, a basic oxygen process shop, a sinter plant, fabricating facilities and many auxiliary buildings and facilities. The South Works is affected by the regulations mentioned above. Potential air pollutants from the South Works are controlled by several types of equipment. For example, the blast furnaces are equipped with dust catchers, venturi scrubbers and tower scrubbers; the electric furnace is equipped with flooded disc scrubbers; the sinter plant is equipped with an electrostatic precipitator; and the basic oxygen process shop is equipped with venturi scrubbers. Regulation 203(b) regulates the emissions of particulate matter from the above-mentioned equipment with the exception of the sinter plant, which is governed by regulation 203(d)(2). Regulation 203(a) governs the emissions from new facilities. It establishes more restrictive standards than are found in 203(b), which governs existing facilities on which funds have already been expended for pollution control. The formula for control under both sections is a "process weight ratio" which allows for the emission of a maximum number of pounds of material per hour of emissions. This number in turn depends upon the weight of raw material used in the process.

Interlake operates seven steel manufacturing plants within Illinois, two of which are located in Chicago. Each of the Chicago plants have coke ovens and blast furnaces. All of Interlake's Illinois plants are affected by the aforementioned regulations. Moreover, Interlake's two coke plants in Chicago are affected by regulations 202(b), 203(d)(6)(B)(i)(aa), 203(d)(6)(B)(i)(bb), and 203(d)(6)(B)(iv)(aa), all of which were adopted on April 13, 1972, along with the previously mentioned regulations.

The raw material used to make coke is a blend of low sulphur coal. The coal is passed through a sleeve into coke ovens through ports resembling manholes on the top of the ovens. The ports are manually sealed with lids as soon as this loading or "charging" process is completed.

Regulation 203(d)(6)(B)(i)(aa) went into effect on April 13, 1972, and became inoperative on January 1, 1974. While it was operative, it limited the period during which smoke or particulate matter could be emitted into the atmosphere after the sleeve has been withdrawn from the port to a span of 20 seconds. Because no emissions occur after the lid has been replaced and sealed, this limitation has the effect of specifying how fast the port lids must be replaced. Regulation 203(d)(6)(B)(i)(bb) became effective on January 1, 1974. It requires employment of "automated negative pressure charging systems" or equivalent systems to fill coke ovens.

After charging, the coal is baked in a relatively oxygen free atmosphere for an average of seventeen hours. When this "coking" cycle has been completed, the hot coke is propelled by a mechanical ram out of the oven through a side door and into a "quench car" which then travels to a

quenching tower where it is deluged with water. At this point the coal has been converted to coke and is ready for use in blast furnaces in the production of iron. Regulation 203(d)(6)(B)(iv)(aa) limits the magnitude of the emissions from the doors at the sides of the coke ovens through which the baked coke is pushed to a maximum of 30 percent opacity. Regulation 201 defines "opacity" as: "A condition which renders material partially or wholly impervious to transmittance of light and causes obstruction of an observer's view." In addition, regulation 202(b) establishes a visible emission standard for all existing emission sources and equipment of 30 percent opacity, and consequently it affects coke ovens by supplementing the regulations referring specifically to them.

Shortly after their adoption, petitioners each sought review of the validity of certain aspects of regulations numbered 103, 104, 105, 106, 107, 108 and 203. In addition, Interlake challenged the validity of regulation 202(b), and the validity of portions of regulation 203 not challenged by U.S. Steel. Because of the many common issues raised and virtually identical arguments advanced, we will deal with these causes simultaneously.

Opinion

Section 10 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1010), authorizes the Board to adopt regulations designed to promote the purposes listed in section 8 of the Act, namely:

"* * * to restore, maintain, and enhance the purity of the air of this State in order to protect health, welfare, property, and the quality of life and to assure that no air contaminants are discharged into the atmosphere without being given the degree of treatment or control necessary to prevent pollution." (Ill. Rev. Stat. 1977, ch. 111½, par. 1008.)

According to section 10 of the Act, such regulations include those which prescribe:

"(a) Ambient air quality standards specifying the maximum permissible short-term and long-term concentrations of various contaminants in the atmosphere;

(b) Emission standards specifying the maximum amounts or concentrations of various contaminants that may be discharged into the atmosphere;

(c) Standards for the issuance of permits for construction, installation, or operation of any equipment, facility, vehicle, vessel, or aircraft capable of causing or contributing to air pollution or designed to prevent air pollution;

(d) Standards and conditions regarding the sale, offer, or use of any fuel, vehicle, or other article determined by the Board to constitute an air-pollution hazard;

(e) Alert and abatement standards relative to air-pollution episodes or emergencies constituting an acute danger to health or to the environment;

(f) Requirements and procedures for the inspection of any equipment, facility, vehicle, vessel, or aircraft that may cause or contribute to air pollution;

(g) Requirements and standards for equipment and procedures for monitoring contaminant discharges at their sources, the collection of samples and the collection, reporting and retention of data resulting from such monitoring." (Ill. Rev. Stat. 1977, ch. 111½, pars. 1010(a) through 1010(g).)

Section 10 of the Act requires that any regulation designed to promote the aforementioned purposes must be adopted pursuant to the procedures prescribed in Title VII of the Act (Ill. Rev. Stat. 1977, ch. 111½, pars. 1026 through 1029). One of the provisions of Title VII, section 27, specifies the factors to be taken into account in the course of enacting substantive regulations:

"(a) * * * In promulgating regulations under this Act, the Board *shall* take into account the existing physical conditions, the character of the area involved, including the character of surrounding land uses, zoning classifications, the nature of the existing air quality * * * and the *technical feasibility* and *economic reasonableness* of measuring or reducing the * * * pollution." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 111½, par. 1027(a).

Petitioners assert that the technical feasibility and the economic reasonableness of certain features of regulations 103, 104, 105, 106, 107, 108, 202 and 203 are not established by substantial evidence in the record. In support of this assertion petitioners first contend that section 29 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1029), combines with Supreme Court Rule 335(h)(2) (Ill. Rev. Stat. 1977, ch. 110A, par. 335(h)(2)), to make the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, pars. 264 through 279) applicable to the instant judicial review. Petitioners then argue that decisions of the Board, like those of other administrative agencies, must be based upon substantial evidence and must not be contrary to the manifest weight of the evidence. Petitioners additionally urge that the Board's order should not be presumed valid and that this court is not required to affirm the order simply because the Board heard the witnesses and made findings. According to petitioners, the scope of our review includes a weighing of the testimony. Finally, they submit that while an administrative order has prima facie validity and must be upheld if it is based upon evidence, this court nevertheless has a duty to examine the evidence and set aside an order which is not supported by the evidence.

██ Implicit in petitioners' position is the assumption that cause No. 57467 and cause No. 57468 are both appeals from adjudications by an administrative agency. This is not the nature of the causes before us. Instead they are each a review of regulations adopted by an administrative agency. Petitioners have confused rule making with adjudication.

In the context of a review of rule making, we do not search the record for substantial evidence supporting a decision, and we do not weigh the evidence in order to determine whether that decision is contrary to the manifest weight of the evidence. Instead we determine whether the action of the rule promulgating administrative agency is arbitrary, capricious or unreasonable. This standard of review was adopted long before the instant appeals were taken. In *Richards v. Board of Education* (1960), 21 Ill. 2d 104, 171 N.E.2d 37, our supreme court stated:

> "It is axiomatic that where the legislature empowers a municipal corporation or administrative agency to perform certain acts, courts will not interfere with the exercise of such powers, or substitute their discretion, unless the action of the municipality or agency is palpably arbitrary, unreasonable or capricious." (*Richards*, 21 Ill. 2d 104, 110, 171 N.E.2d 37.)

As a result, we will not set aside the Board's regulations unless they are clearly arbitrary, unreasonable or capricious. Accord, *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310, 319 N.E.2d 782.

██ Throughout petitioners' initial briefs we are invited to consider the evidence supporting the challenged regulations, find it insubstantial and conclude that the regulations are not supported by the manifest weight of the evidence and are therefore invalid. These arguments are inapposite in the context of a judicial review of rule making. As we have explained, we must find Board regulations clearly arbitrary, capricious or unreasonable before we can overturn them. In their initial briefs petitioners neither raise the issue of whether, nor advance an argument that, the regulations they challenge are arbitrary, capricious or unreasonable. Points not raised in initial briefs are waived and may not be raised subsequently. (See, *e.g.*, *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 87, 369 N.E.2d 155; *Winston v. Mitchell* (1977), 53 Ill. App. 3d 206, 211, 368 N.E.2d 460; *People ex rel. Rappaport v. Drazek* (1975), 30 Ill. App. 3d 310, 317, 332 N.E.2d 532.) It follows that petitioners have waived, and thereby failed to establish, the point that the regulations they challenge are arbitrary, capricious or unreasonable.

As we have indicated, petitioners contend that the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, pars. 264 through 279) is applicable to this review. We realize that petitioners may have inferred the applicability of the manifest weight standard to this review from the

applicability of the Administrative Review Act. If petitioners so reasoned, their conclusion was not valid because their premise was invalid.

Section 2 of the Administrative Review Act provides:

> "This Act shall apply to and govern every action to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of this Act." (Ill. Rev. Stat. 1977, ch. 110, par. 265.)

Section 41 of the Environmental Protection Act provides in pertinent part:

> "Any party to a Board hearing, any person who filed a complaint on which a hearing was denied, any person who has been denied a variance or permit under this Act, and any party adversely affected by a final order or determination of the Board may obtain judicial review, by filing a petition for review within thirty-five days after entry of the order or other final action complained of, *pursuant to the provisions of the 'Administration [sic] Review Act,'* approved May 8, 1945, as amended and the rules adopted pursuant thereto, except that review shall be afforded directly in the Appellate Court for the District in which the cause of action arose and not in the Circuit Court. Review of any rule or regulation promulgated by the Board shall not be limited by this section but may also be had as provided in Section 29 of this Act." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 111½, par. 1041.)

In this provision the Environmental Protection Act adopts the provisions of the Administrative Review Act and makes it applicable to and controlling over judicial reviews of final decisions by the Board. More important, for our present purposes, is the reference in this provision to section 29 of the Environmental Protection Act. (Ill. Rev. Stat. 1977, ch. 111½, par. 1029.) Section 29 provides:

> "Any person adversely affected or threatened by any rule or regulation of the Board may obtain a determination of the validity or application of such rule or regulation by petition for review under Section 41 of this Act." (Ill. Rev. Stat. 1977, ch. 111½, par. 1029.)

Taken together, section 29 and section 41 provide for direct review of Board regulations by this court. Section 29 requires those seeking to file petitions for review of the validity of Board regulations to proceed under section 41. Section 41 requires the filing of such petitions within 35 days after the regulations complained of are adopted. Additionally, section 41 appears to require that such filings conform to the provisions of the Administrative Review Act. The problem with this interpretation of section 41 is that the Administrative Review Act applies only to adjudications and not to rule making.

As we have indicated, section 2 of the Administrative Review Act (Ill.

Rev. Stat. 1977, ch. 110, par. 265) sets forth the scope of the Act. Section 2 of the Act clearly states that the Act applies to and governs judicial reviews of final decisions by an administrative agency. Section 1 of the Act (Ill. Rev. Stat. 1977, ch. 110, par. 264), provides in pertinent part that for the purpose of the Act:

> " 'Administrative decision' or 'decision' means any decision, order or determination of any administrative agency rendered in a particular case, which affects the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." (Ill. Rev. Stat. 1977, ch. 110, par. 264.)

If there is any doubt that this passage, in conjunction with section 2 of the Act, restricts the scope of the Administrative Review Act to controlling reviews of adjudications by administrative agencies, that doubt will be resolved upon reading the following passage from section 1 of the Act.

> "The term 'administrative decision' or 'decision' does not mean or include rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it unless such a rule, regulation, standard or statement of policy is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding, nor does it mean or include regulations concerning the internal management of the agency not affecting private rights or interests." (Ill. Rev. Stat. 1977, ch. 110, par. 264.)

It is clear from this passage that, with regard to validity of regulations, the most that the Administrative Review Act can control is a review of an adjudication involving a challenge to the validity of a regulation. We are not confronted with such a situation. Therefore the Administrative Review Act, by its own terms, does not apply to our review of the Board's regulations. As a result, the only procedural requirement for our reviews of Board regulations currently in existence is the 35-day limitation established by section 41 of the Environmental Protection Act. Ill. Rev. Stat. 1977, ch. 111½, par. 1041.

 █ It also follows that the terms of the Administrative Review Act are in conflict with the language in section 41 of the Environmental Protection Act which seems to require the action of filing petitions for review of the validity of Board regulations to conform to the provisions of the Administrative Review Act. The solution to this dilemma is to be found in rules of statutory construction. It is well settled that statutes which relate to the same subject are *in pari materia* and should be construed together as though they are one statute even if they were enacted at different times. (*E.g., Winston v. Mitchell* (1977), 53 Ill. App. 3d 206, 212, 368 N.E.2d 460.) Section 41 of the Environmental Protection Act purports to deal

with the same subject matter that sections 1 and 2 of the Administrative Review Act deal with, *viz.*, the scope of the Administrative Review Act. Therefore these sections are *in pari materia.* Consequently we will construe them together, as though they were one statute.

■■ Another rule of statutory construction is that where there is a specific statutory provision, and where there is a general statutory provision either in the same or another act which relates to the same subject that the specific provision relates to, the specific provision should be applied. (*E.g., Winston.*) Construing section 41 of the Environmental Protection Act and sections 1 and 2 of the Administrative Review Act together, we find that section 41 contains a general statement about the scope of the Administrative Review Act and that sections 1 and 2 contain specific statements about this Act's scope. Since section 1 and 2 are specific, they should be found to be controlling with regard to the scope of the Administrative Review Act. According to sections 1 and 2, the Administrative Review Act is applicable to reviews of adjudications, and not to direct judicial reviews of regulations or rule making.

■■ Where the meaning of a statute is in dispute, the threshold task of a court is to examine the terms of the statute itself. (*People ex rel. Gibson v. Cannon* (1976), 65 Ill. 2d 366, 369, 357 N.E.2d 1180.) The cardinal rule of statutory construction, to which all other rules of construction are subordinate, is that the true intent and meaning of the legislature must be ascertained and given effect. The language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted. (*General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106, 112, 338 N.E.2d 561.) Sections 1 and 2 of the Administrative Review Act expressly limit the scope of the Act to reviews of adjudications. These sections also expressly emplace judicial reviews of regulations which are initiated immediately upon adoption of the regulations beyond the perimeter of the Act. We cannot believe that the legislature intended to modify this express, clear and unambiguous language through one ambiguous passage in section 41 of the Environmental Protection Act, *viz.*: "pursuant to the provisions of the 'Administration [*sic*] Review Act' * * *." Ill. Rev. Stat. 1977, ch. 111½, par. 1041.

■■ Of course section 41 provides for our direct review of final adjudications by the Board pursuant to the provisions of the Administrative Review Act and within 35 days after entry of an order upon the final adjudication. (See *Lake County Contractors Association v. Pollution Control Board* (1973), 54 Ill. 2d 16, 19, 294 N.E.2d 259; *Rhodes v. Pollution Control Board* (1972), 8 Ill. App. 3d 74, 77, 289 N.E.2d 61.) In addition, sections 29 and 41 together provide for our direct review of regulations promulgated by the Board upon the filing of a petition for

review within thirty-five days after adoption. However, sections 29 and 41 do not make the Administrative Review Act or any of its provisions applicable to these direct reviews of Board regulations. These sections do not, in other words, make the procedural requirements set forth in the Administrative Review Act applicable to and controlling over such reviews of regulations.

■■ We are well aware of petitioners' contention that Supreme Court Rule 335(h)(2) (Ill. Rev. Stat. 1977, ch. 110A, par. 335(h)(2)) combines with section 29 of the Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1029), to make the Administrative Review Act applicable to the instant judicial review. Again we disagree. Supreme Court Rule 335(h)(2) provides:

> "Sections 1, 9(c), 10, 11, and 12 of the Administrative Review Act, as amended (Ill. Rev. Stat. 1969, ch. 110, pars. 264, 272(c), 273, 274, 275), are applicable to proceedings to review orders of the agency. The Appellate Court has all of the powers which are vested in the circuit court by those sections of that Act." (Ill. Rev. Stat. 1977, ch. 110A, par. 335(h)(2).)

As we have noted, section 1 of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264) defines an administrative "decision" as an order in a particular case which affects the legal rights, duties or privileges of parties and which terminates proceedings before the administrative agency. Lest this definition be misunderstood, section 1 goes on to state that an administrative "decision" does not mean or include rules or regulations issued by an agency. Supreme Court Rule 335 (Ill. Rev. Stat. 1977, ch. 110A, par. 335) establishes procedures to be followed in our direct reviews of agency orders. Through its reference to section 1 of the Administrative Review Act, Supreme Court Rule 335(h)(2) makes the definitions in section 1 applicable to our direct reviews of agency orders. (See *Clean Air Coordinating Committee v. Environmental Protection Agency* (1976), 42 Ill. App. 3d 124, 126, 355 N.E.2d 573.) Since an administrative "decision" is an "order" in a particular case which affects the legal rights, duties or privileges of parties and which terminates proceedings, but is not an "order" which adopts rules or regulations, and since Supreme Court Rule 335(h)(2) makes this definition applicable to our direct reviews of agency orders, it follows that Supreme Court Rule 335 provides procedures to be followed when we review agency adjudications but does not pertain to our direct reviews of the validity of regulations. Consequently, Supreme Court Rule 335(h)(2) cannot help make the Administrative Review Act applicable to the instant review. While Supreme Court Rule 335(h)(2) clearly makes sections 1, 9(c), 10, 11 and 12 of the Administrative Review Act applicable to our reviews of Board adjudications, in our view it does not make or help to make these

sections applicable to our reviews of Board regulations. *Cf. Lake County Contractors Association v. Pollution Control Board* (1972), 6 Ill. App. 3d 762, 767-68, 286 N.E.2d 600, *aff'd* (1973), 54 Ill. 2d 16.

■■ Section 3 of the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 266) leads us to the same conclusion. That section provides:

> "The Supreme Court of this State shall have the power to make rules of pleading, practice and procedure supplementary to but not inconsistent with the provisions of this Act, and to amend the same, for the purpose of making this Act effective for the convenient administration of justice, and simplifying procedure so far as it affects judicial review of administrative proceedings." (Ill. Rev. Stat. 1977, ch. 110, par. 266.)

If Supreme Court Rule 355(h)(2) were interpreted so as to make the Administrative Review Act applicable to our reviews of Board regulations, then the Rule would have the effect of extending the scope of the Act to reviews of rules and regulations. Such an extension would violate section 3 of the Act because it would be inconsistent with sections 1 and 2 of the Act which together limit the scope of the Act to reviews of adjudications.

■■ ■ In conclusion, the burden of establishing the invalidity of the challenged regulations is on the petitioners and that burden is very high. Administrative agencies characteristically exercise quasi-legislative power when rule making and quasi-judicial power when adjudicating specific cases. The Board, in promulgating regulations, is exercising quasi-legislative power. Because the Board is inherently more qualified to create technical rules, objections to the Board's regulations must show that the regulations are clearly arbitrary, capricious or unreasonable. (See *Illinois State Chamber of Commerce v. Pollution Control Board* (1977), 49 Ill. App. 3d 954, 960, 364 N.E.2d 631.) Even though the point was waived, we have considered all of petitioners' arguments and all of the issues they raise in an attempt to determine whether any of the challenged regulations are clearly arbitrary, capricious or unreasonable. After lengthy deliberation, we have concluded that none of the regulations have been shown to be arbitrary, capricious or unreasonable. We therefore affirm.

Affirmed.

LORENZ and MEJDA, JJ., concur.