DOLORES L. McCANN, Plaintiff-Appellee, *v.* LISLE-WOODRIDGE FIRE PROTECTION DISTRICT, Defendant-Appellant.

Second District   No. 82—551

Opinion filed June 21, 1983.

Kristine A. Karlin, Jay S. Judge, and James S. Stephenson, all of Judge, Kurnik & Knight, Ltd., of Park Ridge, for appellant.

A. Mark Ialongo and Fred Lambruschi, both of Chicago, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:
Plaintiff, Dolores L. McCann, was involved in an automobile collision and brought suit for personal injuries against two other drivers, defendant David A. Rainford and defendant James J. Filliung and

also against defendant Lisle-Woodridge Fire District (District) a local public entity, on the grounds that Filliung at the time and place in question was acting as agent and servant and in the course of his employment for the District. Negligence was charged against each defendant. The jury returned a verdict in favor of Rainford and in favor of plaintiff against defendants Filliung and Lisle-Woodridge Fire Protection District in the amount of $169,097. Only the District has brought this appeal.

Briefly stated, the collision occurred at a "T" intersection of Maple Avenue and Elm Street in Lisle, Illinois. Defendant Filliung, a volunteer fireman for defendant Lisle-Woodridge Fire Protection District, was responding to a call for his services and pulled around the left side of plaintiff's vehicle, which was stopped at a stop sign on Elm Street facing north at its intersection with Maple Avenue, and into the path of the Rainford vehicle, which was proceeding eastbound on Maple Avenue. Rainford applied his brakes, they locked, and his vehicle skidded until the left front fender struck the driver's door of plaintiff's vehicle.

■ On appeal, defendant first contends that the trial court should have awarded a new trial in this cause because plaintiff failed to comply with discovery procedures by failing to disclose the existence of certain photographs of plaintiff's vehicle and that such noncompliance was substantial and in bad faith. (*E.g., Biehler v. White Metal Rolling & Stamping Corp.* (1975), 30 Ill. App. 3d 435, 443.) We do not disagree with the principles and supporting authorities regarding discovery and the purpose of full and complete discovery suggested by defendant, but, from our examination of the record, we conclude that there was no intentional or wilful conduct on the part of the plaintiff to hide or a failure to disclose the photographs in question.

On the contrary, a review of plaintiff's response to defendant's interrogatories concerning the photographs of the scene, person or vehicles involved in possession of plaintiff reveals that it is, as the result of typographical errors, unintelligible and meaningless. Defendant could have and should have sought clarification of this response well in advance of trial. Further, the record discloses that one of the attorneys representing the District did *voir dire* the plaintiff concerning the photographs in question and was given an opportunity to examine her concerning them and that, on motion of said attorney, the photographs were admitted into evidence. Thus, the photographs were available to the District's counsel in his closing argument, referred to several times in that argument, and were available to the jury for examination. In sum, plaintiff's typographical errors in her response to

interrogatories did not constitute a violation of discovery procedures, and the trial court properly denied a new trial on the basis of this alleged discovery violation.

■ Defendant next maintains that a review of the record shows an oral agreement existed between plaintiff and defendant Rainford which undermined the integrity of the adversary nature of the judicial process. However, both counsel for plaintiff and for defendant Rainford, who were officers of the court, assured the court in no uncertain terms that there were no agreements. Considering the total circumstances shown by the evidence in this case, the conduct of counsel for plaintiff and counsel for defendant Rainford does not lead to the single inference that an agreement existed between plaintiff and defendant Rainford as contended by the defendant District. Therefore, a finding that no agreement existed would not be against the manifest weight of the evidence. The trial court did not abuse its discretion in failing to award defendant District a new trial on this ground.

■ Next the defendant contends that the trial court erred in excluding evidence regarding the effect of taxation on plaintiff's lost wages. Specifically, the court sustained an objection to defendant's attempts to elicit testimony as to plaintiff's net lost wages. Defendant contends that this evidence should have been admitted.

Defendant argues on appeal, as it did in its post-trial motion, that *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755, a wrongful death action brought under the Federal Employers Liability Act (FELA) (45 U.S.C. sec. 51 *et seq.* (1976)) is applicable and supports the conclusion that evidence of the effect of taxation is admissible. Specifically, defendant points to language of the Supreme Court that the FELA is compensation oriented and that a "wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies." (444 U.S. 490, 494, 62 L. Ed. 2d 689, 694, 100 S. Ct. 755, 757.) The narrow issue before us is whether *Liepelt* should be applied to a non-FELA case, specifically a State action for personal injuries.

In Illinois cases both before and after *Liepelt,* Illinois courts have prohibited jury instructions as to the nontaxable nature of damages awards. In two cases cited by the parties, the first and third districts of this court rejected the proposed application of *Liepelt* that would allow such jury instructions, basing the rejection on a determination that the *Liepelt* holding does not apply to claims arising under State law. (*Christou v. Arlington Park-Washington Park Race Tracks Corp.* (1982), 104 Ill. App. 3d 257, 262; *Newlin v. Foresman* (1982), 103 Ill. App. 3d 1038, 1046.) Specifically, the court found in these

cases that *Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 430, *cert. denied* (1972), 409 U.S. 983, 34 L. Ed. 2d 247, 93 S. Ct. 322, is applicable to a State action and that the proffered jury instruction was properly refused. Accord, *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 1009.

Defendant attempts to distinguish between jury instructions on the nontaxability of damages awards, which was the subject of the post-*Liepelt* cases of *Christou* and *Newlin,* and evidence to be introduced that pecuniary loss is a net amount to be determined after deduction for taxes, the issue at bar. Defendant would apply *Liepelt* to the latter. We agree with plaintiff that defendant is seeking to obtain through evidence at trial what it could not do by way of instructions and that allowing such evidence at trial would be inconsistent with prohibiting the instructions.

The United States Supreme Court recognized in *Liepelt* that both of these questions in an FELA action are governed by Federal rather than State law. (444 U.S. 490, 492-93, 62 L. Ed. 2d 689, 693, 100 S. Ct. 755, 757.) However, this court, in the post-*Liepelt* cases discussed above, has rejected *Liepelt* and found that *Raines* is applicable in cases arising under State law. In *Raines* our supreme court stated as follows:

> "In *Hall v. Chicago and Northwestern Ry. Co.,* 5 Ill. 2d 135, at 151-152, this court observed: 'It is a general principle of law that in the trial of a lawsuit the status of the parties is immaterial. Thus, what the plaintiff does with an award, or how the defendant acquires the money with which to pay the award, is of no concern to the court or jury. Similarly, whether the plaintiff has to pay a tax on the award is a matter that concerns only the plaintiff and the government. The tortfeasor has no interest in such question. And if the jury were to mitigate the damages of the plaintiff by reason of the income tax exemption accorded him, then the very Congressional intent of the income tax law to give an injured party a tax benefit would be nullified.' " (51 Ill. 2d 428, 430.)

This view is in accord with that of the dissent in *Liepelt,* wherein Justice Blackmun and Justice Marshall said:

> "[B]y mandating adjustment of the award by way of reduction for federal income taxes that would have been paid by the decedent on his earnings, the Court appropriates for the tortfeasor a benefit intended to be conferred on the victim or his survivors.

* * *

Ordinarily, however, the effect of an income tax upon the receipt of a payment is of no real or ultimate concern to the payer. Apart from required withholding, it just is not the payer's responsibility or, indeed, 'any of his business.' The concept of 'net after taxes' and the omnipresence of the tax collector, to be sure, are present facts of life and are within the constant awareness of both recipient and payer. But these factors do not change the basic character of an award for damages, whether that award be one to compensate the surviving victim for his injury, or one to compensate the deceased victim's survivors, by way of statutory wrongful-death benefit, for their loss. The income tax effect should flow and be retained in its own channel. Surely, it should not operate to assist the tortfeasor by way of a benefit, perhaps even a windfall." 444 U.S. 490, 498-99, 62 L. Ed. 2d 689, 697, 100 S. Ct. 755, 760.

There appears to be no reason to distinguish between permitted jury instructions and permitted testimony at trial on the effect of taxation on the amount (after-tax) of an award that the successful plaintiff will realize. We conclude that where, as here, a case is brought pursuant to State law, *Liepelt* is inapplicable, and the rationale of State judicial decisions prohibiting jury instructions on nontaxability of damage awards should also prohibit the introduction of evidence of the effect of taxes on income loss in a personal injury action. The trial court did not err in sustaining plaintiff's objection to the testimony as to plaintiff's net lost wages. See *In re Air Crash Disaster* (N.D. Ill. 1981), 526 F. Supp. 226, 229-31 (most logical and likely conclusion is that Illinois law precludes both admission of evidence and giving of an instruction as to taxation and damage awards).

■ Finally, defendant contends that under section 1 of "An Act in relation to tort liability of firemen of fire protection districts or corporations" (Ill. Rev. Stat. 1979, ch. 127½, par. 46) (hereinafter fire protection district statute) defendant District cannot be held liable for plaintiff's injuries where wilful and wanton misconduct on the part of defendant Filliung, a compensated volunteer fireman, was neither pleaded nor proved. Specifically, this section provides:

"Sec. 1. In case any injury to the person or property of another is caused by the negligent operation of any motorized fire fighting equipment by a compensated fireman or authorized volunteer fireman of a fire protection district or incorporated fire protection organization while he is engaged in the performance of his duties as a fireman, and without contributory negligence of the injured person, of the owner of the injured prop-

erty or of the agent or servant of the injured person or owner, the fire protection district or incorporated fire protection organization in whose behalf the fireman is performing his duties shall be liable for that injury. While engaged in preventing or extinguishing fires, any fireman or authorized volunteer fireman of a fire protection district or incorporated fire protection organization may enter upon the lands of any person, firm, private or municipal corporation or the State of Illinois to carry out his duties and while so acting shall not be criminally or civilly liable for entering upon such lands. In no case shall such a fireman be liable in damages for any injury to the person or property of another caused by him while engaged in the performance of his duties as a fireman, unless such injury results from his wilful and wanton misconduct.''

The thrust of defendant District's argument is that under this section defendant Filliung, a compensated volunteer fireman, could only be held liable for injuries and damages resulting from his wilful and wanton misconduct and that, since the responsibility of the District in this cause rests on the doctrine of *respondeat superior,* it could not be held liable unless Filliung was charged and proved guilty of wilful and wanton misconduct rather than negligence.

■ In ruling on defendant's motion, the trial judge construed the last sentence of the aforesaid fire protection district statute as modifying only the previous sentence and interpreted the statute as applying the wilful and wanton standard only when a fireman is engaged in the performance of his duties of preventing or extinguishing fires and not while otherwise operating motorized firefighting equipment. For the reasons set forth below, we conclude that, while the trial judge's particular interpretation of the statute was in error, the defendant District can be held liable under the statute for the negligence of its fireman in the operation of motorized firefighting equipment even though the fireman individually can be held liable only for his wilful and wanton misconduct. The trial court's ruling was correct even though based on an erroneous reading of the statute. A reviewing court can affirm a judgment of the trial court for reasons other than those relied upon by the trial court, and the judgment of the trial court will be sustained if it is correct, irrespective of whether the court's reasoning was correct. *Monarski v. Greb* (1950), 407 Ill. 281, 291; *Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 67.

■ We agree with the defendant District that, inasmuch as the fire protection district statute, section 1—4—4 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—4—4) (hereinafter municipal

fire department statute), and section 5—103(b) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, par. 5—103(b)) (hereinafter Tort Immunity Act) all relate to the same subject matter and are parts of a comprehensive statutory scheme, the sections should be construed *in pari materia* in order to determine legislative intent and avoid injustice. (*Clement v. O'Malley* (1981), 95 Ill. App. 3d 824, 838 (Sullivan, P.J., dissenting).) These sections, therefore, will be considered together so that they may be given harmonious effect. *People v. Scheib* (1979), 76 Ill. 2d 244, 250.

Section 5—103(b) of the Tort Immunity Act provides that the fire protection district statute and the municipal fire department statute are exceptions to the provisions of section 5—103(b) that grant immunity to a local public entity and public employee from liability caused by an act or omission by the public employee in fighting a fire. In *Adams v. City of Peoria* (1979), 77 Ill. App. 3d 683, 687-88, the third district of this court recognized that the tort liability of firefighters of fire protection districts and, inferentially, of fire protection districts themselves is found in the fire protection district statute. Similarly, the municipal fire department statute establishes the tort liability of members of municipal fire departments and of municipalities for the conduct of their firemen in operating motor vehicles.

The municipal fire department statute provides as follows:

"Sec. 1—4—4. In case any injury to the person or property of another is caused by the negligent operation of a motor vehicle by a member of a municipal fire department while the member is engaged in the performance of his duties as fireman, and without the contributory negligence of the injured person or the owner of the injured property or the agent or servant of the injured person or owner, the municipality in whose behalf the member of the municipal fire department is performing his duties as fireman shall be liable for that injury. But in no case shall a member of a municipal fire department be liable in damages for any injury to the person or property of another caused by him while operating a motor vehicle while engaged in the performance of his duties as a fireman, unless such injury results from his wilful and wanton misconduct. As used in this section the term 'member of a municipal fire department' includes an authorized volunteer fireman." (Ill. Rev. Stat. 1979, ch. 24, par. 1—4—4.)

A reading of this statute together with the fire protection district statute makes evident the legislative intent to impose liability upon

fire protection districts and municipalities for the negligence of their firemen in the operation of motor vehicles or motorized firefighting equipment while engaged in the performance of their duties as firemen and, at the same time, to impose a higher standard, that of wilful and wanton misconduct, as a basis of liability for an individual fireman for the acts or omissions committed while engaged in the performance of his duties as a fireman.

■ In reaching this conclusion, we have noted that in the fire protection district statute liability is imposed on a fire protection district for the negligence of its fireman in the operation of "any motorized fire fighting equipment," while in the municipal fire department statute liability is imposed on the municipality for the negligence of its fireman in the operation of "a motor vehicle." We agree with defendant District that any distinction between a motor vehicle and motorized firefighting equipment is without basis. In *Stubblefield v. City of Chicago* (1971), 48 Ill. 2d 267, 271, our supreme court, in order to avoid possible constitutional defects arising from an invalid classification (see *Harvey v. Clyde Park District* (1964), 32 Ill. 2d 60), held that " 'motorized fire fighting equipment' " as used in the fire protection district statute is no broader than " 'motor vehicle' " as used in the municipal fire department statute. For the same reasons, we feel compelled to hold that "motorized fire fighting equipment" as used in the fire protection district statute is no less extensive than "motor vehicle" as used in the municipal fire department statute and that Filliung's privately owned vehicle, which he was driving in response to a fire call while operating the blue emergency light, was "motorized fire fighting equipment" within the meaning of the fire protection district statute.

We agree with the defendant District that the phrase "while engaged in the performance of his duties as a fireman" in the last sentence of the fire protection district statute is not limited, as the trial court held it to be, to include only those duties performed in connection with preventing or extinguishing fires. The reference to "such a fireman" in the last sentence of that statute was intended to include any compensated fireman or authorized volunteer fireman of a fire protection district while he is engaged in the performance of his duties as a fireman, including the operation of motorized firefighting equipment. However, we disagree with the conclusion drawn by the defendant District that it could therefore only be liable if Filliung's conduct was wilful and wanton.

■ ■ In support of the aforesaid contention, defendant District argues that section 2—109 of the Tort Immunity Act (Ill. Rev. Stat.

1979, ch. 85, par. 2—109), which provides that a public entity is not liable for any injury resulting from an employee's action when the employee is not liable, requires that Filliung's conduct had to be shown to be wilful and wanton in order to impose liability of the District. This argument is not valid for several reasons. In *Adams v. City of Peoria* (1979), 77 Ill. App. 3d 683, 687, the court pointed out that the fire protection district statute is an exception to the broad immunity granted under section 5—103(b) of the Tort Immunity Act and therefore, by implication, to the provisions of section 2—109 of that Act. Further, it is a well-settled rule of statutory construction that where there is a specific statutory provision, and where there is a general statutory provision either in the same or in another act which relates to the same subject that the specific provision relates to, the specific provision controls over the general statute. (*People ex rel. Goodman v. Wabash R.R. Co.* (1946), 395 Ill. 520, 540; *Nabor v. Occidental Life Insurance Co.* (1979), 78 Ill. App. 3d 288, 294; *United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 43.) Clearly, the intent of the fire protection district statute, manifest in its words, is to impose liability upon fire protection districts for the negligence of its firemen in the operation of motorized firefighting equipment, while, at the same time, limiting the liability of firemen as individuals to wilful and wanton misconduct. Any other construction would nullify and completely ignore the positive and specific language of the statute which makes the fire protection district so liable. *Cf. People ex rel. Goodman v. Wabash R.R. Co.* (1946), 395 Ill. 520, 540-41 (statutes specifically providing that city bonds issued for hospital purposes be payable out of taxes for hospital purposes controlled over general statute providing that taxes levied to pay refunding bonds be in addition to and exclusive of the maximum of other taxes authorized to be levied).

Defendant has also cited numerous cases holding that under the doctrine of *respondeat superior* the employer cannot be held liable unless the employee is liable. (*E.g., Woodman v. Litchfield Community School District No. 12* (1968), 102 Ill. App. 2d 330; *Fustin v. Board of Education* (1968), 101 Ill. App. 2d 113.) However, these cases are inapposite, since none of them involve the application of a statutory provision, such as here, which clearly imposes one standard upon the employer for the acts or omissions of the employee that can be imputed to the employer and a different standard on the employee for his acts or omissions where he is to be held individually responsible. In enacting the fire protection district statute and the municipal fire department statute, the legislature in its wisdom recognized that, in

answering fire calls, firemen are obligated to drive motorized equipment as rapidly as possible in order to respond promptly to such calls and thus effect the saving of lives and property. While the legislature apparently felt that it was necessary to protect the public from injury due to the operation of such equipment at fast and dangerous speeds by making the district or the municipality responsible for the negligent operation of the vehicles, it could at the same time properly decide that it would be unfair to impose personal liability on the fireman individually for any such negligent conduct so that the liability of the fireman was limited only to his wilful and wanton acts or omissions.

This appears to be a reasonable and valid classification. Defendant has not contended that it is in any way constitutionally defective. In this case, the defendant District's fireman, Filliung, was found negligent by the jury in the operation of his motor vehicle while engaged in the performance of his duties as a fireman, and, pursuant to the provisions of the fire protection district statute, the jury properly found the District responsible for that negligence.

The judgment of the trial court is affirmed.

Affirmed.

LINDBERG and REINHARD, JJ., concur.