THE VILLAGE OF FRANKLIN PARK, Plaintiff-Appellee, v. PAUL DICK-MAN *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 85—0249, 85—0250 cons.

Opinion filed January 22, 1988.

Thomas F. Meyer, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, and Mary Beth Kinnerk, Assistant State's Attorneys, of counsel), for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Following separate bench trials the defendants, Robert E. Carver and Paul Dickman, were found guilty of obstructing traffic. Both

defendants were fined $500. The defendants now appeal their convictions and their appeals have been consolidated. Although the defendants raise several issues on appeal, we find it necessary to consider only their contention that as railroad train conductors, they could not be properly prosecuted under section 11–1416 of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 11–1416) for their trains' obstructing motor traffic at a vehicular railway crossing in Franklin Park, Illinois. We agree and we reverse.

Both Carver and Dickman were employed by the Milwaukee Railroad as train conductors. Likewise, both defendants were issued citations for obstructing motor traffic at a vehicular railroad crossing in Franklin Park.

In the case of Robert Carver, on July 11, 1984, the train on which he was the conductor stopped. Carver radioed the train's engineer, who informed Carver that he had stopped the train pursuant to the yardmaster's instructions. The train blocked auto traffic for more than 12 minutes. Without being asked whether he had the authority or the ability to move the train, Carver was issued a citation for the train's obstructing traffic, in violation of section 11–1416 (Ill. Rev. Stat. 1981, ch. 95½, par. 11–1416).

In the case of Paul Dickman, on November 23, 1984, the train on which he was the conductor was ordered by someone other than Dickman to stop to make a crew change. Within moments, an airhose broke and the airbrakes were released in an emergency stop. About 15 minutes later a Franklin Park police officer boarded the train and spoke with the engineer. The engineer informed the officer that the train stopped for a crew change but that the crew was late. The engineer was issued a citation for obstructing traffic, also in violation of section 11–1416 (Ill. Rev. Stat. 1981, ch. 95½, par. 11–1416). The officer then went to the train's caboose, where he spoke with Dickman. Dickman informed the officer that the train was stopped because it was in an emergency status. The train blocked vehicular traffic at a crossing for a total of 50 minutes.

In separate trials, the trial court held that there was no emergency reason for stopping either train and that the defendants as conductors were in command of their respective train. The trial court found each defendant guilty of obstructing traffic as charged.

It is provided in section 11–1416 of the Illinois Motor Vehicle Code, which the defendants were found guilty of violating:

> "No person shall wilfully and unnecessarily hinder, obstruct or delay *** any other person in lawfully driving or traveling along or upon any highway within this State ***." Ill. Rev.

Stat. 1981, ch. 95½, par. 11—1416.

The defendants maintain that this foregoing section does not govern trains obstructing motor traffic at vehicular railway crossings. The defendants insist that section 14.1 of "An Act in relation to *** operating railroads" (Ill. Rev. Stat. 1981, ch. 114, par. 70.1) regulates and controls railroad employees' obstruction of highway grade crossings with a train. Section 14.1 (Ill. Rev. Stat. 1981, ch. 114, par. 70.1) provides as follows:

> "It is unlawful for any railroad employee to willfully or intentionally permit any train *** to obstruct public travel at a railroad-highway grade crossing for a period in excess of 10 minutes, except where such train *** cannot be moved by reason of circumstances over which the railroad employee has no control. However, no employee acting under the rules or orders of the railroad corporation or its supervisory personnel may be prosecuted for such violations." Ill. Rev. Stat. 1981, ch. 114, par. 70.1.

■ Since section 11—1416 and section 14.1 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1416; ch. 114, par. 70.1) concern the obstruction of public travel, the sections are in *pari materia* and will be construed together, as though they were one statute, even though they were enacted at different times. (*People v. Bailey* (1983), 116 Ill. App. 3d 259, 452 N.E.2d 28; *United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 380 N.E.2d 909.) Because the facts of the instant cases apply to both sections, we apply the maxim of statutory construction that where there is a specific statutory provision, as in section 14.1 (Ill. Rev. Stat. 1981, ch. 114, par. 14.1), and where there is another general statutory provision, as in section 11—1416 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1416), which relates to the same subject to which the specific statute relates, the specific statute controls over the general statute. *McCann v. Lisle-Woodridge Fire Protection District* (1983), 115 Ill. App. 3d 702, 450 N.E.2d 1311; *People v. Matzker* (1983), 115 Ill. App. 3d 70, 450 N.E.2d 395.

■ Section 14.1 is clearly more specific than section 11—1416. Section 14.1 is not only considerably more specific than section 11—1416, but it also applies to the precise facts in the cases at bar. Section 14.1 expressly pertains to the obstruction of railroad highway crossing grades by railroad employees, whereas section 11—1416 pertains to the obstruction of any highway by any person. It was therefore error to prosecute and find defendants, railroad train conductors, guilty under section 11—1416 (Ill. Rev. Stat. 1981, ch. 95½, par. 11—1416).

■ Another cardinal rule of statutory construction is that the intent and meaning of the legislature must be ascertained and given effect. (*United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 43.) The language used in a statute is the primary source for determining this intent, and where that language is certain and unambiguous, the proper function of the courts is to enforce the statute as enacted. (*United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34, 43.) Clearly, the intent of section 14.1 manifest in its words, is to preclude the prosecution of railroad employees acting under the rules or order of the railroad corporation or its supervisory personnel, such as in the cases at bar, while permitting prosecution of those employees for their wilful and intentional misconduct.

■ In the instant case, the record does not establish that the defendants were acting wilfully or intentionally. Rather, the record reflects quite the contrary. Defendant Carver testified that he stopped the train pursuant to the order of the yardmaster and had no authority or control to move the train. Defendant Dickman testified that he stopped the train to make a prescheduled crew change which was ordered by the railroad corporation, Milwaukee Railroad and Indiana Harbor Belt Railroad. Dickman further testified that when the train stopped, an airhose broke and the train went into an emergency status. The train could not be moved prior to repairs being made. There was no testimony that either defendant, Carver or Dickman, could start or stop the train. In the case of Carver, the Franklin Park officer who issued the traffic citation testified that he did not ask Carver if he had the power or control to move the train. In the case of Dickman, the Franklin Park officer who issued the traffic citation testified that he never bothered to investigate the airhose to find out if it was in fact broken. Therefore, defendants' actions were not proven to be wilful and intentional. For the foregoing reasons we reverse.

Reversed.

SULLIVAN and MURRAY, JJ., concur.